IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

WILMA BENNETT,

        Plaintiff,

v.                                         CIVIL ACTION NO.   2:18-cv-01280

KEYSTONE CREMATION ALLIANCE, LLC,

        Defendant.

MEMORANDUM OPINION AND ORDER

Pending before the court is the plaintiff's Motion to Remand [ECF No. 8]. Also pending is the defendant's Motion to Dismiss [ECF No. 6]. For the reasons that follow, the plaintiff's Motion is **GRANTED**, and the defendant's Motion is **DENIED as moot**.

I.     Background

In September 2017, the plaintiff, Mrs. Wilma Bennett, sought the services of the defendant, Keystone Cremation Alliance, LLC, to cremate the remains of her late husband, Mr. Luther G. Bennett Sr. Compl. 1. [ECF No. 10-1]. In October 2017, the defendant delivered Mr. Bennett's remains to the plaintiff at her home. *Id.* The problem, however, was that the defendant delivered the remains of the *wrong* Mr. Bennett: The defendant delivered the cremated remains of Mr. *Kenneth P.* Bennett. *Id.* at 2. Shocked over the not knowing where or what happened to her husband's remains, the plaintiff immediately contacted the defendant to locate her missing

husband. *Id.* After the plaintiff expressed her dissatisfaction with the defendant, she instructed the defendant not to contact her directly. *Id.* Nevertheless, as alleged in the Complaint, the defendant called the plaintiff, threatened her, and "treat[ed her] in a manner that lacked total decency." *Id.*

As a result of the shock of not knowing the location or condition of her husband's remains, and as a result of the shocking phone call she received, on February 27, 2018, the plaintiff offered to settle this matter outside of litigation for the sum of $32,000 plus a waiver of any outstanding accounts with the defendant. Reply Ex. A, at 2 [ECF No. 11-1]. The defendant declined this offer. Consequently, on August 2, 2018, the plaintiff filed a complaint in the Circuit Court of Boone County, West Virginia. She alleges, inter alia, negligence, intentional infliction of emotion distress, outrage, and invasion of privacy. *See* Compl. 2–4.

On September 6, 2018, the defendant removed this action to this court and filed a motion to dismiss for failure to state a claim on September 11, 2018. On September 12, 2018, the plaintiff filed a motion to remand arguing that the amount in controversy did not exceed the jurisdictionally required $75,000.

## II. Discussion

A defendant may remove its case to a federal court if the parties are diverse and the amount in controversy exceeds $75,000, exclusive of interests and costs. 28 U.S.C. §§ 1332, 1441. The party seeking removal bears the burden of showing that the federal court has jurisdiction. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d

2

148, 151 (4th Cir. 1994). If the court is left with doubts concerning whether it has jurisdiction, remand is necessary. *Id.* ("Because removal jurisdiction raises significant federalism concerns, we must strictly construe removal jurisdiction. If federal jurisdiction is doubtful, a remand is necessary." (citation omitted)).

A single, simple principle provides the foundation for jurisdictional inquiries: "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Consistent with "[t]he intent of Congress drastically to restrict federal jurisdiction in controversies between citizens of different states," federal courts have "rigorously enforced" the amount in controversy requirement. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938). But federal courts have avoided protracted litigation over complex jurisdictional rules. *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010) ("Complex jurisdictional tests complicate a case, eating up time and money as the parties litigate, not the merits of their claims, but which court is the right court to decide those claims."); *see also Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir. 1999) ("Jurisdictional rules direct judicial traffic. They function to steer litigation to the proper forum with a minimum of preliminary fuss.").

As such, the amount in controversy inquiry remains relatively simple—the amount in controversy "is what the plaintiff claims to be entitled to or demands." *Scaralto v. Ferrell*, 826 F. Supp. 2d 960, 967 (S.D. W. Va. 2011); *see also St. Paul Mercury,* 303 U.S. at 288 ("The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the

sum claimed by the plaintiff controls if the claim is apparently made in good faith . . . .").

The defendant argues that the amount in controversy exceeds $75,000 based on the plaintiff's characterization of the defendant's conduct ("intentional, atrocious, intolerable, extreme, and reckless") and the kinds of damages the plaintiff is seeking (emotional damages, punitive damages, pre- and post-judgment interest, attorney's fees, and costs).[1] The defendant also argues that because punitive damages are being sought, "the jurisdictional minimum is likely satisfied due to West Virginia's tendency to award excessive punitive damages. *See Mullins v. Harry's Mobile Homes*, 861 F. Supp. 22, 24 (S.D. W. Va. 1994). Similarly, the defendant argues that damages for annoyance and attorney's fees can be added to the measurable damages.

I do not necessarily disagree with these propositions. *See McCoy v. Erie Ins. Co.*, 147 F. Supp. 2d 481, 489 (S.D. W. Va. 2001) (The court may consider, inter alia, "the type and extent of the plaintiff's injuries and possible damages recoverable."). However, I rejected a totality of the circumstances approach in *Scaralto* when there are simpler, straight-forward ways to find the amount in controversy. *See Scaralto*, 826 F. Supp. 2d at 963. As stated in *Scaralto*, this "judicial valuation" approach has a weak foundation "because it misconstrues the meaning of the term 'amount in controversy.' It is also time-consuming and allows for disparate results in factually similar cases." *Id.* at 962–63. Consequently, when there is an *ad damnum* clause, the

---

[1] To be sure, § 1332 plainly excludes interest and costs from amount-in-controversy calculations. 28 § U.S.C. § 1332(a).

4

plaintiff's demand, if made in good faith, is determinative, unless it is legally impossible. *See St. Paul Mercury*, 303 U.S. at 288. I also determined that a settlement demand should have the same legal status as an *ad damnum* clause. *Scaralto*, 826 F. Supp. 2d at 968–69. This approach enhances the predictability and efficiency of jurisdictional decisions and is particularly important considering that fewer complaints contain *ad damnum* clauses, "providing a uniform and predictable method for directing judicial traffic." *Id.* at 969.

To be sure, the plaintiff in *Scaralto* demanded an amount *over* the jurisdictional minimum, whereas here the plaintiff made a demand *below* the jurisdictional amount. But that does not change the result. The question, as the defendant would have it, has never been what the plaintiff *could* recover. Instead, it is what the plaintiff *claims* she is entitled to recover. Here, the plaintiff offered to settle this case for $32,000 with a waiver of any outstanding/unpaid debt accounts held by the defendant. The plaintiff's demand—i.e., the amount in controversy—is less than $75,000. This demand is evidence of the total value the plaintiff believes that the case is worth. It is not, however, a launching point to add additional kinds of damages as the defendant suggests.

Because the jurisdictional minimum of $75,000 is not met, I lack subject-matter jurisdiction to hear this case.

5

III. Conclusion

For the reasons discussed, this court **GRANTS** the plaintiff's Motion to Remand [ECF No. 8], **REMANDS** this case to the Circuit Court of Boone County, and **DENIES as moot** the defendant's Motion to Dismiss [ECF. No. 6].

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER: October 11, 2018

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE